UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODRIGUEZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. CV 15-01476-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**PROCEEDINGS**

On March 2, 2015, Michael Rodriguez ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on June 15, 2015. On October 22, 2015, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

## BACKGROUND

Plaintiff is a 54-year-old male who applied for Social Security Disability Insurance benefits on August 1, 2011. (AR 25.) The ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 1, 2004, through his date last insured of March 31, 2009. (AR 27.)

Plaintiff's claim was denied initially on October 4, 2011, and on reconsideration on January 20, 2012. (AR 25.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Joel B. Martinez on September 13, 2013, in Pasadena, California. (AR 25.) Plaintiff appeared and testified at the hearing and was represented by John Silverman, a non-attorney representative. (AR 25.) Medical expert ("ME") Donald L. Plowman, M.D., testified by telephone. (AR 25.) Vocational expert ("VE") Kelly Bartlett appeared and testified at the hearing. (AR 25.)

The ALJ issued an unfavorable decision on October 22, 2013. (AR 25-37.) The Appeals Council denied review On August 27, 2014. (AR 11-13.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ failed to properly consider the opinion of the consultative examiner.
2. Whether the ALJ committed legal error in not adequately assessing Mr. Rodriguez' testimony regarding his pain and limitations.
3. Whether the ALJ failed to properly consider the treating doctor's opinion, Dr. John Itamura.
4. Whether the ALJ failed to properly consider the opinion of Dr. Ralph Gambardella.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v.

Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not

significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 1, 2004, through his date last insured of March 31, 2009. (AR 27.)

At step two, the ALJ determined that Plaintiff, through the date last insured, had the following medically determinable severe impairments: status post August 2001 and January 2002 right knee surgeries, status post November 2004 right shoulder arthroscopy, status post January 2008 right shoulder hemiarthroplasty with meniscus allograft interposition for right shoulder osteoarthritis, right shoulder tendinopathy of the supraspinatus tendon, fraying of the anterior superior labrum, and degenerative changes at the acromioclavicular joint space, and obesity. (AR 27.)

At step three, the ALJ determined that Plaintiff, through the date last insured, did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 27.)

The ALJ then found that Plaintiff, through the date last insured, had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> Claimant needed to use a cane for prolonged ambulation, could occasionally climb ramps and stairs, could never climb ladders, ropes or scaffolds, could not be around heights or hazards, could perform postural activities occasionally, could not perform overhead reaching with the right dominant upper extremity, and could perform occasional reaching to waist level with the right dominant upper extremity.

(AR 28-36.) In determining the above RFC, the ALJ made an adverse credibility determination. (AR 29.)

At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform his past relevant work as a truck driver. (AR 36.) The ALJ, however, also found that, considering Claimant's age, education, work experience, and RFC, there were jobs that existed

in significant numbers in the national economy that Claimant, through the date last insured, could have performed, including the jobs of counter clerk and host or greeter. (AR 36-38.)

Consequently, the ALJ found that, within the meaning of the Social Security Act, Claimant was not disabled at any time from July 1, 2004, the alleged onset date, through March 31, 2009, the date last insured. (AR 37.)

## DISCUSSION

The ALJ decision must be affirmed. The ALJ properly considered the medical evidence, and properly discounted Plaintiff's subjective symptoms. The ALJ's RFC is supported by substantial evidence.

### I. THE ALJ PROPERLY CONSIDERED THE MEDICAL EVIDENCE

Plaintiff contends that the ALJ failed to provide specific, legitimate reasons for discounting the opinions of Dr. Bilezikjian, Dr. Itamura, and Dr. Gambardella. The Court disagrees.

#### A. Relevant Federal Law

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If

a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.    Analysis**

Plaintiff Michael Rodriguez's date last insured was March 31, 2009. (AR 27.) He has not worked since 2003 because of right shoulder and right knee impairments found severe by the ALJ. (AR 27, 28.) Nonetheless, the ALJ found Plaintiff capable of performing a reduced range of light work, with use of a cane for prolonged walking. (AR 28.) The ALJ's RFC is supported by substantial evidence.

1. Dr. Bilezikjian

Plaintiff contends that the ALJ failed to provide specific, legitimate reasons for rejecting sitting, standing, and walking limitations imposed by consulting orthopedist Dr. Zaven Bilezikjian. The Court disagrees.

Dr. Bilezikjian submitted a February 28, 2013, report of his examination of Plaintiff as well as a Medical Source Statement of Ability To Do Work-Related Activities (Physical). (AR 33, 34, 863-873.) Dr. Bilezikjian diagnosed Plaintiff with right shoulder status post multiple surgeries with limited motion and pain, severe degenerative arthritis of the bilateral knees and trigger fingers of the right thumb and little finger. (AR 33.) He specifically acknowledged three right shoulder surgeries (2004, 2007 and 2011) and arthroscopic surgeries of the right knee in 2001 and 2002. (AR 33.) Plaintiff sat comfortably on the examination table and could get off and on it, but has severe varous deformities and walked with a limp. (AR 33.) Dr. Bilezikjian assessed a light work RFC with limitations to standing and walking of 30 minutes a day and sitting seven hours a day. (AR 33.) Dr. Bilezikjian indicated that the above limitations would relate back 10 years. (AR 873.) The ALJ accorded "significant weight" to Dr. Bilezikjian's opinion because it was based on independent clinical findings and is generally consistent with the record as a whole, particularly Dr. Itamura's right shoulder findings discussed below. (AR 34.)

Although the ALJ adopted Dr. Bilezikjian's light work RFC and right shoulder findings, the RFC does not incorporate his standing, walking, and sitting limitations. Rather, he adopted the RFC of a testifying orthopedist, Dr. Donald Plowman. (AR 34, 1109-1122.) Dr. Plowman diagnosed Plaintiff with the severe impairments of right shoulder arthritis and arthritis in both knees, worse on the right. (AR 34.) He opined that in March 2009 Claimant would have a light work RFC and could stand and walk for a total of six hours in an eight hour day and sit six hours as well. (AR 34.) Dr. Plowman specifically testified that "prior to about 2011, there was not a lot of comment about his knees, and there's really not objective evidence that he was having problems with his knees back at that time" at the degree he is now. (AR 1114.) He further testified that the knee problem "worsened quite significantly" since 2009. (AR 1115.)

He concluded that there was no evidence to support lower extremity limitations prior to 2010, but because Plaintiff had some arthritis in the right knee he limited walking, sitting and standing to six hours a day each. (AR 1118-1119.) He acknowledged Plaintiff's use of a cane on and off for walking. (AR 1119.) The ALJ gave "the most weight" to Dr. Plowman's opinion because "he cited to the record, reviewed the most updated evidence of record and explained his rationale cogently." (AR 34.) Thus, Dr. Plowman's findings and RFC are substantial evidence in support of the ALJ's RFC.

Plaintiff's criticisms of the ALJ's consideration of Dr. Bilezikjian's opinion lack merit. Plaintiff disputes that Dr. Bilezikjian assessed him with a light work RFC but this contention is plainly wrong. See AR 868. Plaintiff also argues that the ALJ failed to provide any reason or rationale for rejecting Dr. Bilezikjian's standing, walking, and sitting limitations, but as indicated above, the ALJ gave the most weight to Dr. Plowman's opinion that there was no evidence in the record to support any relation back of 2013 knee limitations to 2009. (AR 34, 1114.) The fact that neither the ALJ nor Dr. Plowman mention Dr. Bilezikjian by name does not change the fact that the ALJ and Dr. Plowman provided a specific, legitimate rationale (AR 34) for not incorporating Dr. Bilezikjian's knee limitations in the RFC. The ALJ, moreover, credited Dr. Plowman's opinion "because he cited to the record." (AR 34.) Dr. Bilezikjian's relation back opinion (AR 873) is generic, without specific reference to Plaintiff's knee limitation or citation to the record. Plaintiff does not supply any reference to the record that would contradict Dr. Plowman's statement that no objective evidence exists to support the degree of lower extremity limitations in 2009 that exist today. Plainly, the ALJ rejected Dr. Bilezikjian's knee limitations because there was no objective medical evidence to support those limitations. (AR 36.) An ALJ may reject a treating physician's opinion that is not supported by treatment notes or contradicted by other assessments of a claimant's medical condition. Batson v. Comm'r, 359 F.3d 1190, 1195, esp. n.3 (9th Cir. 2005); Bayliss, 427 F.3d a 1216.

Plaintiff disagrees with the ALJ's interpretation of the evidence, but it is the ALJ's responsibility to resolve conflicts in the medical evidence. Andrews, 53 F.3d at 1039. Where

the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. Rollins v. Massanari, 261 F.3d at 853, 857 (9th Cir. 2001).

The ALJ rejected Dr. Bilezikjian's knee limitations for specific, legitimate reasons supported by substantial evidence.

### 2. Dr. Itamura

Plaintiff also relies on the opinion of treating physician Dr. John Itamura who performed right shoulder surgery in January 2008. (AR 30.) In August 2013, Dr. Itamura opined Plaintiff could only occasionally lift and carry less than 10 pounds, and could only sit, stand or walk for 15 minutes at a time and up to one hour total. (AR 33.) Dr. Itamura also opined that Claimant would be absent from work at least three or more times a month due to his conditions, and could not return to his work as a truck driver because of his shoulder. (AR 33.) Dr. Itamura indicated that his restrictions would extend back to July 1, 2013. (AR 547.)

Plaintiff argues that the ALJ did not properly consider Dr. Itamura's standing and walking restrictions and likely absenteeism. Plaintiff observes that Dr. Itamura's opinion is generally consistent with Dr. Bilezikjian's opinion and that the ALJ gave significant weight to Dr. Bilezikjian's opinion. As noted above, however, the ALJ did not adopt Dr. Bilezikjian's standing, walking, and sitting limitations, relying instead on Dr. Plowman's opinion that there was no objective evidence that Plaintiff was having problems with his knees in March 2009, the date last insured. (AR 1114.) Dr. Plowman's opinion would apply as well to Dr. Itamura's lower extremity limitations. The contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion. Tonapetyan v. Halter, 240 F.3d 1144, 1150 (9th Cir. 2000).

As to Dr. Itamura's absenteeism opinion (AR 34, 571, 895), the ALJ gave it little weight because Dr. Itamura's reports were done for workers' compensation purposes and thus directed primarily to the issue of whether Plaintiff could return to his past work as a truck

driver.[1] The ALJ was not obliged to accept his opinion as to whether Plaintiff could perform alternate work in the national economy. Batson, 359 F.3d at 1194. The ALJ was entitled to rely on Dr. Plowman's opinion that in March 2009 Plaintiff could do light work.

The ALJ also gave little weight to Dr. Itamura's various opinions because of "inconsistencies internally and with other evidence of record." (AR 34.) The ALJ detailed numerous inconsistencies in Dr. Itamura's reports. (AR 34.) In particular, the ALJ noted that Dr. Itamura's 2012 opinion that Plaintiff has marked limitations in his left upper extremity is not supported by the overall record. (AR 34.) Dr. Itamura had stated in October 2007 that x-rays of Plaintiff's left shoulder were not too bad and in 2008 the Claimant denied left arm pain. (AR 34.) Then, in October 2012, Dr. Itamura stated that Claimant could frequently perform reaching in all directions with the left hand. (AR 34.) The "other evidence of record" would include Dr. Plowman's light work RFC, the contradictory clinical evidence regarding Plaintiff's shoulder (AR 30) and the adverse credibility finding discussed below. More specifically, in 2007, x-rays of the left shoulder were "not too bad". (AR 30.) After right shoulder surgery in January 2008, Claimant reported 40% relief of his preoperative pain. (AR 30.) In September of 2008, Claimant denied left arm pain. (AR 34.) Dr. Itamura himself stated that "everything is going fine." (AR 30.) In January 2009, a physical therapist reported Plaintiff's range of motion was approaching normal limits. (AR 30.) In February 2009, Claimant reported that he drove a truck the previous weekend and that the shifting did not bother him. (AR 31.)

Plaintiff disputes the ALJ's findings, but again it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. Rollins, 261 F.3d at 857.

---

[1] Under State workers' compensation law, a claimant is disabled if unable to perform his or her prior work whereas a claimant for Social Security purposes is not disabled if he or she can do alternate work in the national economy. See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984); Silva v. Colvin, 2013 WL 6859263, at *5 (C.D. Cal. Dec. 30, 2013).

The ALJ rejected Dr. Itamura's lower extremity limitations and absenteeism/disability opinion for specific, legitimate reasons supported by substantial evidence.

### 3. Dr. Gambardella

Plaintiff contends the ALJ erred in rejecting the 2006 opinion of Dr. Ralph Gambardella that Plaintiff could not lift more than 10 to 15 pounds. (AR 31.) The ALJ accorded little weight to Dr. Gambardella's opinion because it is "not adequately supported by the overall evidence" or with Dr. Plowman's assessment or "the record as a whole." (AR 35.) In particular, the ALJ noted Plaintiff only complained of pain with lifting moderately heavy objects. (AR 35.)

Plaintiff asserts that the ALJ rejected Dr. Gambardella's opinion solely because it was not consistent with Dr. Plowman's opinion. This assertion is simply inaccurate. The record includes both Dr. Plowman's and Dr. Bilezikjian's light work RFCs. Again, the opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion. Tonapetyan, 240 F.3d at 1150. There is also Plaintiff's own comment about lifting (AR 35) and the clinical evidence. (AR 30.)

The ALJ rejected Dr. Gambardella's opinion for specific, legitimate reasons.

\* \* \*

The ALJ properly considered the medical evidence. The ALJ rejected the opinions of Dr. Bilezikjian, Dr. Itamura and Dr. Gambardella for specific, legitimate reasons supported by substantial evidence.

## II. THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOMS

Plaintiff contends that the ALJ erred in discounting his subjective symptom allegations. The Court disagrees.

### A. Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the

severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

**B.     Analysis**

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause his alleged symptoms. (AR 29.) The ALJ, however, also found that Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are "not entirely credible." (AR 29, 36.) Because the ALJ did not make any finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's credibility. Smolen, 80 F.3d at 1283-84; Tommasetti v. Astrue, 533 F.3d at 1035, 1039-40 (9th Cir. 2008). The ALJ did so.

First, the ALJ found that Plaintiff's subjective symptom allegations were inconsistent with the medical evidence. (AR 35.) An ALJ is permitted to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). Here the ALJ found that the clinical signs at the orthopedic examination and the light work RFCs of Dr. Bilezikjian and Dr. Plowman are inconsistent with disability symptoms. (AR 35.) There was little or no documented knee treatment through March 31, 2009. (AR 36.) Plaintiff claims he received no treatment for his knee before 2011 because he had no

insurance but he clearly was receiving treatment for his shoulder and other evidence of record, including Plaintiff's statements and activities discussed herein, are inconsistent with disabling knee limitations.

Second, the ALJ noted inconsistencies between Plaintiff's statements regarding his subjective symptoms and his other statements and conduct. Light v. Social Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997); Thomas, 278 F.3d at 958-59. Here, as to his shoulder improvement, Plaintiff acknowledged improvement after his January 2008 right shoulder surgery. (AR 35.) He stated in September 2008 he had 40% relief of his pre-operative pain. (AR 35.) He reported Dr. Itamura saying everything was going along fine. In January 2009, a physical therapist stated that the Claimant's range of motion was approaching normal limits. (AR 35.) As to his knee impairment, Plaintiff claims his knee has been an issue since 2001 (AR 1131), and he cannot do an office job because of painful knees. (AR 28.) Yet he worked as a truck driver until 2003 when he stopped working because of his shoulder impairment. (AR 36.) On February 17, 2009, he reported that he drove a truck the previous weekend and that the shifting did not bother him. (AR 35.) He completed a course as a loan officer by driving himself 25 minutes to the training site. (AR 28, 35.) As already noted, there was little or no documented knee treatment through March 31, 2009. (AR 36.)

Third, the ALJ found that Plaintiff's daily activities are inconsistent with disabling limitations, which is a legitimate consideration in evaluating credibility. Bunnell, 947 F.2d at 345-46. Here, the ALJ found that the Plaintiff engaged in fairly normal activities of daily living, such as watering the yard and plants, feeding the dogs, washing clothes, driving, and vacuuming. (AR 28-29, 35.) Plaintiff argues that these activities do not prove he can work, but they do suggest he has greater functional abilities than alleged. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff disputes the ALJ's adverse credibility determination, but again it is the ALJ who has the responsibility to resolve ambiguities in the record. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. Rollins, 261 F.3d at 857.

The ALJ properly discounted Plaintiff's subjective symptom allegations for clear and convincing reasons supported by substantial evidence.

* * *

The ALJ's RFC is supported by substantial evidence. The ALJ's nondisability determination is supported by substantial evidence and free of legal error.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this case with prejudice.

DATED: November 19, 2015           /s/ John E. McDermott
                                   JOHN E. MCDERMOTT
                                   UNITED STATES MAGISTRATE JUDGE

15